# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EDDIE BAKER,**

        Petitioner,

        **v.**

**WILLIAM POLLARD,**
Warden, Green Bay Correctional Institution,

        Respondent.

Case No. 05-C-1031

## DECISION AND ORDER

On September 27, 2005, the petitioner, Eddie Baker ("Baker"), who is currently incarcerated at the Green Bay Correctional Institution, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner is serving a ten-year term of incarceration to be followed by a five-year term of supervised release for committing the offense of first-degree recklessly endangering safety, while armed, as party to a crime. Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court conducted a review of Baker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court determined that the eight grounds for relief raised by Baker presented arguable claims of constitutional violations and directed the Respondent to answer the petition

The Respondent answered and asserted that Baker's petition is a "mixed petition" containing exhausted claims and claims that were not properly exhausted by Baker in state court. The Respondent also argued that Baker's exhausted claims are without merit

because Baker cannot prove that the Wisconsin courts resolved his claims in a manner that is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

The Court issued a Decision and Order on April 3, 2008, agreeing that two of Baker's eight grounds for relief were not properly exhausted in state court. The Court gave Baker three options: try to prove good cause to excuse his failure to exhaust; withdraw the unexhausted claims and proceed on the exhausted ones; or voluntarily dismiss the entire petition. Baker chose the second option: he withdrew the unexhausted claims and filed a brief addressing the claims that he properly exhausted. (Petitioner's Brief at 1.) The parties fully briefed the properly exhausted issues and the petition is ready for resolution.

## FACTUAL BACKGROUND

The facts of this case are set forth in the Wisconsin Court of Appeals' decision affirming the petitioner's conviction and sentence.[1]

> An off-duty Milwaukee police officer, Alvin Hannah, was on his way home when he heard gunshots. He testified that he went toward the sound of the shots, and he observed Baker firing a handgun at a vehicle that was driving away from him. He saw Baker and a woman, subsequently identified as Baker's wife, Patricia, get into a car. Officer Hannah also observed a man who appeared to have been injured lying on the street. The man yelled to Officer Hannah that he had been shot by the man in the car. Officer Hannah ran to Baker's car and ordered the occupants out. Police subsequently discovered two handguns in Baker's car: (1) a .32-caliber handgun, which was empty, but appeared to have been fired recently, was found on the passenger's

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-2-

> side of the car in plain sight, and (2) a .357-magnum handgun, also empty, was found under the driver's seat, but it did not appear to have been fired recently. Police also discovered that Patricia Baker possessed a significant amount of cocaine. Baker was charged with recklessly endangering safety for firing at the truck and with reckless injury for shooting the person on the street.

(Answer to Petition for Writ of Habeas Corpus ("Answer"), Ex. B at 2.)

Baker was charged in a two count complaint with first degree reckless injury, while armed and first degree recklessly endangering safety, while armed. The state amended the information on the morning the jury trial commenced and added party to a crime as to each count. (Answer, Ex. E at App. 107.) On April 12, 2001, a Milwaukee County jury acquitted Baker of count one but found Baker guilty of count two: first-degree recklessly endangering safety while armed with a dangerous weapon, party to a crime, a violation of Wis. Stat. §§ 941.30(1), 939.63, and 939.05. (Answer, Ex. A.) On May 10, 2001, the circuit court imposed a ten-year sentence of incarceration followed by a five-year sentence of extended supervision. (Answer, Ex. A.)

Baker's appointed counsel filed a motion for post conviction relief which was denied by the trial court on May 30, 2002. (Answer, Ex. E at App. 110.) On September 26, 2002, appointed counsel next filed a No Merit Report pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Wis. Stat. § 809.32 explaining to the Wisconsin Court of Appeals that there were no issues of arguable merit. (Answer, Ex. E.) Baker filed a response *pro se* raising a number of additional issues he believed had arguable merit. (Answer, Ex. F.)

On April 11, 2005, the Wisconsin Court of Appeals summarily affirmed the judgment of conviction and relieved appointed appellate counsel of further representation.

-3-

(Answer, Ex. B at 12.) Baker filed a *pro se* petition for review that was denied by the Wisconsin Supreme Court on August 25, 2005. (Answer, Ex. C.)

## APPLICABLE LAW

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") greatly restricts federal habeas review of state court criminal convictions.

> [W]hen a claim has been adjudicated by the state courts on the merits, that is, substantively and not procedurally, . . . a writ should be granted only if the state court's decision was "contrary to" clearly established federal law as determined by the Supreme Court, *§ 2254(d)(1)*, involved an "unreasonable" application of the same, *id.*, or was based upon an "unreasonable" determination of the facts in light of the evidence presented in the state court proceedings, *§ 2254(d)(2)*.

*Connor v. McBride*, 375 F.3d 643, 648-49 (7th Cir. 2004).

A state court decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different" from relevant Supreme Court precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court's application of the federal law is "unreasonable" if it correctly identifies the controlling legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* The question is whether the state court's application of clearly established federal law is objectively unreasonable; an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 693-4 (2002).

-4-

> An incorrect application of clearly established federal law is not necessarily an unreasonable one. *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001). As such, a federal court cannot substitute its independent judgment as to the correct outcome; rather, it must determine that a state court decision was both incorrect *and* unreasonable before it can issue a writ of habeas corpus. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

*Davis v. Litscher*, 290 F.3d 943, 946 (7th Cir. 2002).

A state court decision "'minimally consistent with the facts and circumstances of the case'" is not unreasonable. *Conner*, 375 F.3d at 649 (citations omitted). A court unreasonably applies federal law if it makes a determination "'lying well outside the boundaries of permissible differences of opinion.'" *Id.* (citation omitted). Finally, a state court's factual determinations are presumed correct and are not "'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence." *Id.* (and cases cited therein); 28 U.S.C. § 2254(e)(1).

Further, the Court may not grant federal habeas relief unless it determines there was "clearly established federal law" as determined by the Supreme Court at the time of the state court ruling in question. *Lockyer v. Andrade*, 538 U.S. 63, 71-2 (2003). A rule is "clearly established" when it is compelled by existing Supreme Court precedent. This Court may not rely on precedent of circuit courts of appeals. There must be Supreme Court precedent to support the petitioner's claim and that Supreme Court precedent must have clearly established the relevant legal principle as of the time of the petitioner's direct appeal. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

-5-

## DISCUSSION

Baker raises several challenges to his conviction. Baker first asserts a violation of his right to due process because he claims there was no evidence to support the elements of the party to a crime charge. On direct appeal, the Wisconsin Court of Appeals reviewed Baker's sufficiency claims under the standard annunciated in *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). (Answer, Ex. B at 3.) Pursuant to *Poellinger*, a reviewing court may not substitute its judgment for that of the trier of fact and must accept the findings by the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force, that no reasonable trier of fact could have found guilt beyond a reasonable doubt. *Id.* at 507, 451 N.W.2d at 757-58. Wisconsin effectively duplicates the Supreme Court standard for sufficiency challenges. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) ("We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 – if the settled procedural prerequisites for such a claim have otherwise been satisfied – the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."). This highly deferential standard is "nearly insurmountable." *United States v. Hale*, 448 F.3d 971, 982 (7th Cir. 2006). Pursuant to the strictures imposed by the AEDPA, Baker must prove that the Wisconsin courts acted contrary to, or unreasonably applied the principles of *Jackson v. Virginia* to the facts presented.

The Wisconsin Court of Appeals stated that the "testimony from the State's witnesses was not inherently incredible and was more than adequate to support the jury's verdict." (Answer, Ex. B at 3.) "In particular, Officer Hannah's testimony that he saw Baker fire a gun at the departing truck, if believed, was sufficient by itself to sustain the reckless-endangerment charge." (*Id.*)

Viewing the evidence in the light most favorable to the conviction, the Court concludes that sufficient evidence supports the jury's verdict finding Baker guilty of first-degree recklessly endangering safety while armed with a dangerous weapon, as party to a crime. Baker fails to present any argument that would call the findings and conclusions of the Wisconsin Court of Appeals into question. Moreover, Baker fails to present any argument to show that the Wisconsin Court of Appeals acted contrary to, or unreasonably applied, the clearly established principles of *Jackson v. Virginia,* when it concluded that the state presented sufficient evidence upon which a rational jury could base its guilty verdict.

Baker's second and third claim challenge his conviction under Wisconsin's party to a crime statute, Wis. Stat. § 939.05.[2] Baker claims that he was not given proper

---

[2]Wis. Stat. § 939.05. **Parties to crime**.

(1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

(2) A person is concerned in the commission of the crime if the person:

(a) Directly commits the crime; or

notice of which clause of the party to a crime statute he was being charged under. Baker also asserts that his right to trial by jury was violated because without proof of another participant in the crime, the trial court was left to decide he was guilty as a principal offender to the first degree recklessly endangering safety charge.

The Wisconsin Supreme Court has held that when a person is charged as a party to a crime, it is a way of establishing criminal liability separate from proving the elements of the underlying offense. "The party to a crime charge does not add to or alter the elements of the offense to which the defendant is charged as a party. The manner of participation in a crime is not an element of the offense to which one is charged as party to a crime." *State v. Horenberger*, 119 Wis. 2d 237, 243, 349 N.W.2d 692, 694 (1984). The jury must find all the elements of the underlying completed offense beyond a reasonable doubt, and must also find beyond a reasonable doubt that the defendant participated in the commission of those elements in one or more of the three means of participation as set forth in § 939.05.

> Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can

---

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his or her mind and no longer desires that the crime be committed and notifies the other parties concerned of his or her withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

>   be committed. The cases across the country – New York, Michigan, Washington – recognize and note that it is sufficient that all jurors unanimously agree on their ultimate conclusion that the defendant was guilty of the crime charged, though they may not agree on the manner in which the defendant participated in the crime if under any of the alternative ways the defendant would be guilty of the crime charge. To permit any other conclusion would be to permit the guilty defendant to escape accountability under the law because jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant.
> 
>   Here Holland was charged with first-degree murder, and the jury was instructed on the various parties to the crime theories. We recognize that the party to a crime statute does not create three separate and distinct offenses. In *State v. Shears*, 68 Wis. 2d 217, 229 N.W.2d 103 (1975), we pointed out that the purpose behind the enactment of sec. 939.05, Stats., was to abolish the common law distinctions between principals and accessories to a crime. We specifically held that the instructions to the jury, which not only instructed on the principal crime but on aiding and abetting and conspiracy, did not unconstitutionally deny a defendant notice. We approve the conclusion reached in *State v. Holloway*, 7 N.C. App. 147, 171 S.E.2d 475 (1979), when the court said "there is no such offense . . . as 'aiding and abetting in the offense of murder.' When two or more persons aid and abet each other in the commission of a crime, all being present, all are principals, and equally guilty."
> 
>   Here we have a single offense for which the defendant could be found liable in three alternative ways – direct commission, aiding and abetting, and conspiracy – when the jury unanimously concluded the defendant was guilty of second-degree murder. The jury unanimously found participation, and it was not necessary that it be agreed as to the theory of participation. To require unanimity as to the manner of participation would be to frustrate the justice system, promote endless jury deliberations, encourage hung juries, and precipitate retrials in an effort to find agreement on a nonessential issue.

*Holland v. State*, 91 Wis. 2d 134, 143-44, 280 N.W.2d 288, 292-93 (1979); *see Lampkins v. Gagnon*, 710 F.2d 374, 377 (7th Cir. 1983) (where the jury unanimously finds participation, it is not necessary that it be agreed as to the theory of participation).

Under *Schad v. Arizona*, 501 U.S. 624 (1991), whenever a statute lists alternative means of committing a crime, the question of whether a jury must unanimously agree upon a single means of commission depends on whether the statute's definition of a crime comports with the requirements of due process. *Id.* at 636-40 (plurality opinion). In *Schad*, the Supreme Court favored a constitutional test for unanimity challenges that focuses on an evaluation of the fundamental fairness and rationality of the legislature's choice to provide for a single offense with alternate modes of commission. The Supreme Court held:

> We are convinced, however, of the impracticability of trying to derive any single test for the level of definitional and verdict specificity permitted by the Constitution, and we think that instead of such a test our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness . . . and for the rationality that is an essential component of that fairness. In translating these demands for fairness and rationality into concrete judgments about the adequacy of legislative determinations, we look both to history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing the moral and practical equivalence of the different mental states that may satisfy the *mens rea* element of a single offense. The enquiry is undertaken with a threshhold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime.

*Id.* at 637-38.

With respect to evaluating the constitutionality of a statutory definition, the Supreme Court held:

> Where a State's particular way of defining a crime has a long history, or is in widespread use, it is unlikely that a defendant will be able to demonstrate that the State has shifted the burden of proof as to what is an inherent element of the offense, or has defined as a single crime multiple offenses that are inherently separate. Conversely, a freakish definition of the elements of a crime that finds no analogue in history or in the criminal law of other jurisdictions will lighten the defendant's burden.

*Id.* at 640.

The Wisconsin legislature has drawn the distinction between elements of a completed crime and alternative methods of participating in completing that crime. Imposition of liability on a participant in the completed crime is proper so long as all twelve jurors agree beyond a reasonable doubt that the individual participated either as a principal, an aider and abettor, or as a co-conspirator. The party to a crime statute creates alternate modes of commission for a single crime, for which unanimity is not required. *See State v.Derango*, 236 Wis. 2d 721, 736, 613 N.W.2d 833, 840 (2000). Applying *Schad's* due process test of fundamental fairness and rationality, unanimity is not required as to how the defendant participated in the offense of recklessly endangering safety.

Therefore, Baker's contention that he was denied due process by the failure of the prosecutor to specify in the information which of the three paragraphs in Wis. Stat. § 939.05(2) he was relying upon is without merit. Baker's claim that his right to a unanimous jury verdict was violated is also without merit. The jury unanimously found participation, and it was unnecessary that the jury agree as to the theory of participation. Baker is unable to demonstrate that the Wisconsin Court of Appeals acted contrary to, or unreasonably applied clearly established federal law when it upheld his conviction as party to a crime.

Baker's fourth challenge to his conviction is that the prosecutor, the trial judge and two defense attorneys all conspired to deny Baker his right to compulsory process by threatening and coercing his wife, Patricia Baker ("Patricia"), to invoke her privilege against

-11-

self-incrimination[3] rather than testify on his behalf at trial. The facts regarding Patricia and her culpability are set forth in the Wisconsin Court of Appeals decision.

> [W]e note that when police discovered that Patricia Baker possessed cocaine, she was arrested. She subsequently entered a plea agreement by which she pled guilty to drug possession. In return, she received immunity from prosecution in the shootings. Baker planned to call Ms. Baker as a witness at trial, and the record indicates that she would have testified that she, not her husband, fired the gun. Before she could testify, however, the prosecution argued that while it was bound by the terms of Ms. Baker's plea agreement, it should be allowed to cross-examine her about whether she understood the terms of her plea deal in an attempt to establish that she could be less than truthful in her testimony regarding the shootings. The prosecutor also noted that Ms. Baker could be subject to prosecution for perjury if she testified falsely, and might possibly be prosecuted for her part in the shootings. As a result of these comments, the circuit court questioned Ms. Baker and her trial counsel about her understanding of her plea deal. As it did so, it became concerned that should Ms. Baker testify as she planned, she could be placed in jeopardy again. It noted that trial counsel's testimony regarding the plea negotiations might be required, and that trial counsel could have a potential conflict that would prevent him from representing Ms. Baker further. The circuit court then appointed another attorney to discuss with Ms. Baker the potential consequences of her planned testimony. When she returned to court later in the day, Ms. Baker announced that she no longer wished to testify, but instead wished to invoked her right against self-incrimination.

(Answer, Ex. B at 5.)

Baker argues that Patricia declined to testify on his behalf because she was threatened and intimidated by the judge, prosecutor and two defense attorneys. The Wisconsin Court of Appeals determined that Baker's contentions were completely unsupported by the record and mere allegations. (Answer, Ex. B at 6.) In his petition, Baker again asserts that Patricia's plea agreement gave her "transactional immunity to testify on

---

[3]The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V.

-12-

[Baker's] behalf without putting herself in further jeopardy." (Supporting Memorandum to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By A Person In State Custody ("Supporting Mem.") at 7.) Baker submits an Affidavit from Patricia, which was submitted to the Wisconsin Court of Appeals, wherein she states that she fired the gun in self-defense and wanted to so testify at Baker's trial. (Answer, Ex. E at App 112.) Patricia claims that she was unaware of the terms of her plea agreement, including immunity, because she was "in a state of shock" at the plea hearing and engaged in her plea colloquy "without really listening." (*Id.* at App. 113.) Patricia stated that she declined to testify for Baker "under duress" and after threats were made by her trial counsel, the prosecutor, the circuit court judge and her newly appointed counsel. (*Id.* at App. 114.) Patricia's Affidavit shows that she invoked the Fifth Amendment after consulting with two separate attorneys, both of whom counseled her against testifying because of the real prospect of being charged with perjury along with additional criminal consequences. (*Id.* at App. 114.)

Patricia called into question whether her plea was voluntarily and intelligently made. If established, these allegations could have reopened Patricia's plea and potentially exposed her to greater liability on the cocaine charge. Moreover, if Patricia's plea had been vacated, she faced the potential of facing charges relating to the shooting. If Patricia had opted to testify at Baker's trial and claim she was the shooter, she faced the possibility of a perjury charge for testifying falsely at her husband's trial. The circuit court judge properly recognized the potential jeopardy to Patricia and properly appointed new counsel to advise

-13-

her of the possible consequences if she testifed at Baker's trial. After consultation with a newly appointed attorney, Patricia declined to testify and invoked the Fifth Amendment.

The Fifth Amendment privilege against self-incrimination applies where a witness' answers "would furnish a link in the chain of evidence" against her. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The trial court must determine whether the witness has correctly asserted the privilege. The Court has reviewed the transcript of the proceedings held on April 11, 2001, before the circuit court. This transcript was submitted with petitioner's Motion to Supplement An Exhibit to Petitioner's Brief by 28 U.S.C. § 2254 Rule 7's Expansion of Record ("Transcript"). The transcript confirms that the trial court judge properly recognized the potential jeopardy to Patricia if she testified and properly appointed new counsel to advise her. After being apprised of the potential consequences for testifying, Patricia invoked the Fifth Amendment. (Transcript at 109-12.) Patricia made the decision not to testify on the advice of two defense attorneys who counseled her regarding the reasonable risk of self-incrimination if she were to testify at her husband's trial.

Baker must demonstrate that the Wisconsin courts acted contrary to, or unreasonably applied, clearly established principles of Supreme Court law when the Wisconsin Court of Appeals held that Patricia properly invoked her Fifth Amendment privilege and Baker was not denied his right to compulsory process when she did so. Baker has failed to demonstrate that the Wisconsin courts acted contrary to, or unreasonably applied Supreme Court law when the appellate court determined that Patricia's invocation of the Fifth Amendment privilege against self-incrimination was proper because she had a

-14-

reasonable apprehension of the danger of self-incrimination if she were to testify as she planned. Baker has further failed to demonstrate that the Wisconsin courts acted contrary to, or unreasonably applied, Supreme Court law when the appellate court determined that the trial judge, prosecutor and defense counsel acted reasonably by properly advising Patricia of the potential consequences of her testimony.

Baker's final challenge to his conviction is that he received ineffective assistance of counsel. Baker challenges the effectiveness of his trial counsel on numerous grounds including that counsel was ineffective for failing to object to the amendment of the charge to include liability under Wisconsin's party to a crime statute. Baker further contends that his counsel was ineffective when his wife invoked her Fifth Amendment privilege against self-incrimination. As previously discussed, these challenges are without merit. Baker further contends that his trial counsel was ineffective for failing to object to "unconstitutional jury instructions" and an "unconstitutional jury verdict" as well as failing "to keep Baker informed so he could be of assistance in his own defence [sic]." (Petition at 9.2). Baker also alleges that his attorney failed to ensure that exhibits prepared by a police defense witness were sent to the jury when the jury requested that the main police witness's testimony be read back.

An ineffective assistance of counsel claim is governed by a two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* is clearly established Federal law, as determined by the Supreme Court of the United States. *See Washington*, 219 F.3d at 627-28. Pursuant to *Strickland*, a petitioner "must show that counsel's performance

-15-

was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. The first element requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In considering the first element, the Supreme Court has instructed courts not to engage in "the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In addition, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second component, a petitioner "must show that there is reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial who result is reliable." *Id.* at 687.

If the Court determines that the petitioner has failed to satisfy either component of the *Strickland* test, it need not address the other. *See Chichakly v. United States*, 926 F.2d 624, 630-31 (7th Cir. 1991). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

In regard to the exhibits, Baker's trial counsel objected to the submission of the exhibits because they showed that Baker had been convicted of a prior felony in Chicago,

Illinois, and counsel did not want this information to reach the jury. As the Wisconsin Court of Appeals determined, "[t]his is a classic example of reasonable trial strategy, and, as such, it is unassailable." (Answer, Ex. B at 9.)

Baker does not allege any credible facts which overcome the presumption that his attorney provided professionally competent assistance. Baker further fails to establish how he was prejudiced by trial counsel's alleged deficient performance. Thus, Baker fails to establish that the Wisconsin courts acted contrary to, or unreasonably applied, the principles of *Strickland v. Washington*, when Baker's claim of ineffective assistance of counsel was rejected.

In conclusion, the decision of the Wisconsin courts was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Therefore, in light of the foregoing, Baker's petition for writ of habeas corpus is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Baker's Petition for Writ of Habeas Corpus (Docket No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of September, 2008.

**SO ORDERED,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA
Chief Judge**